**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-20737-UU

JANE DOE, Individually and as
Parent and Natural Guardian of
F.H., a Minor,

Plaintiff,

v.

CARNIVAL CORPORATION *et al.*,

Defendants.
_________________________________/

# ORDER

THIS CAUSE is before the Court upon Defendant Carnival Corporation's ("Carnival") Motion to Dismiss Count III of Plaintiff's Amended Complaint and to Strike Demand for Punitive Damages. D.E. 31 (the "Motion"). The Court has reviewed the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons set forth herein, the Motion is GRANTED IN PART AND DENIED IN PART.

## I. Factual Allegations

The following facts come from Plaintiff's Amended Complaint, D.E. 22 (the "Complaint"), and are taken as true.

Plaintiff Jane Doe[1] ("Plaintiff") is the mother of 15-year-old F.H. *Id.* ¶¶ 5, 9. On November 15, 2019, Plaintiff and F.H. were passengers on Carnival's cruise ship, the *Carnival Valor*. *Id.* ¶¶

[1] Though Plaintiff has not moved to proceed anonymously, the Court finds that anonymity is appropriate here. "Generally, parties to a lawsuit must identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.3d 320, 322 (11th Cir. 1992). Federal Rule of Civil Procedure 10(a) requires a plaintiff to "include the names of all the parties" in her complaint. "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Frank*, 951 F.3d at 322. A plaintiff seeking to contravene Rule 10(a) by suing under a fictitious name bears the burden of showing she has a substantial privacy right which outweighs the customary and

10, 12, 14. While the ship was in transit and in navigable waters, a crewmember-employee of Defendant Dufry Cruise Services, LLC ("Dufry")[2] committed statutory rape, rape, forcible rape, sexual battery, sexual assault, sexual abuse, and sexual molestation of F.H. *Id.* ¶ 14. This employee's name is believed to be Ganesh Joshi, *id.*, and the Court will refer to him as such. Another crewmember/Dufry employee (whose first name is believed to be "Segain" or to that effect, but whose last name is unknown) watched and guarded the door to the room in which the offenses were committed. *Id.* F.H. did not consent to the sexual acts committed by Mr. Joshi and, moreover, being only 15 years old, F.H. was incapable of giving effective consent. *Id.* ¶ 16.

Sexual assaults on cruise ships are tragically frequent. *See id.* ¶¶ 17–18. In the year-long period ending November 2019, Carnival reported 43 sexual assaults on its cruise ships, 37 of which were passenger victims. *Id.* ¶ 18. Passengers are statistically more likely to be sexually attacked on a Carnival cruise ship than any other cruise ship, and the rate of sexual assaults on Carnival's ships are greater, per capita, than in 20 states, including New York and California. *Id.* Despite this, Carnival fails to warn its passengers of the growing epidemic of rape and sexual assault at sea so as not to scare any prospective passengers away. *Id.* ¶ 19.

---

constitutionally-embedded presumption of openness in judicial proceedings. *Id.* at 323. "The Eleventh Circuit has identified several factors for district courts to consider in determining whether a party should be permitted to proceed anonymously, including: (1) whether the party challenges government activity, (2) whether the party will be 'required to disclose information of the utmost intimacy,' (3) whether the party will be coerced into admitting illegal conduct or the intent to commit illegal conduct, thereby risking criminal prosecution, (4) whether the party is a minor, (5) whether the party will be exposed to physical violence should he or she proceed in their own name, and (6) whether proceeding anonymously 'pose[s] a unique threat of fundamental unfairness to the defendant.'" *Doe v. Swearingen*, No. 18-24145, 2019 WL 95548, at *2 (S.D. Fla. Jan. 3, 2019) (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011)). "Courts may consider other factors as well based on the particularities of each case, and no single factor is necessarily dispositive." *Id.* (citing *Frank*, 951 F.2d at 323). Here, Jane is the mother of the victim minor child, F.H., and the subject matter involves information of the "utmost intimacy," including sexual assault. Divulging Jane's identity would, by extension, divulge the identity of her minor child. The Court does not find that Defendants would face any unique threat of fundamental unfairness by Plaintiff's proceeding anonymously. Accordingly, the Court hereby grants Plaintiff leave to proceed under the fictitious name "Jane Doe" throughout the course of this lawsuit.

[2] Dufry contracted with Carnival and operated retail stores on the *Carnival Valor*. *Id.* ¶ 11.

Plaintiff also alleges that Carnival "fails to…provide adequate security and/or training and/or supervision[] to prevent such rapes and sexual assaults." *Id.* ¶ 19. Plaintiff alleges that Carnival has breached its duty of care relating to training and monitoring crew members in ways such as:

a. By failing to supervise and monitor the activities and whereabouts of its crew members onboard the subject vessel;

b. By failing to reasonably and properly control the activities and whereabouts of its crew members;

c. By failing to reasonably and properly enforce rules, regulations, policies and procedures for its crew members who fraternize with passengers;

d. By failing to reasonably and properly train its crew members and officers regarding non-fraternization and sexual assault prevention; and

e. By failing to promulgate, monitor and enforce rules or policies regarding the prohibition against crew members having contact and interaction, including sexual relations, with passengers.

*Id.*¶ 55.

Plaintiff does not allege facts specifically pertaining to the training or monitoring of Ganesh Joshi or "Segain." Instead, Plaintiff insinuates that Carnival perpetuates an environment where its foreign-born employees are prone to rape. This environment is created when Carnival (a) intentionally hires employees from impoverished countries that lack the infrastructure to provide Carnival with thorough criminal background checks, (b) works those inadequately-screened employees in slavish conditions, and (c) fails to "control" or train those male employees to not rape child passengers:

- "[Carnival] allows its crew members unparalleled access to families and children, yet many of those same crew members are young men who hail from developing countries or from countries where the economy is bleak and the unemployment rate is high, who have not been properly screened, trained, or monitored." *Id.* ¶ 22.

- "[Carnival] knows from years of it and its concessionaires hiring people from these developing or impoverished countries[] that the investigation into the background and

history of the prospective crewmember[s] in these countries, because of the lack of infrastructure, invariably cannot be complete or verified. The countries simply do not have the infrastructure to provide [Carnival] or its concessionaires full and proper background information on prospective hires." *Id.* ¶ 23.

- "[Carnival] does little or nothing to train the young men when they are hired, or to monitor the activities of these young men after they are hired. These young men are typically paid a minimum wage, below the wage which would be required to hire Americans for the same jobs, the young men are placed on a ship for months at a time away from their families and spouses and significant others, and the men are required to work slavishly, often seven days a week for 12 to 14 hours a day, all in the name of the employer saving money." *Id.* ¶ 24.

- "[Carnival] fails to sufficiently train and control its male crew members to stay away from minor children passengers, which failures allow and/or promote improper conduct by the crewmembers toward passengers including statutory rape, rape, forcible rape, sexual battery, sexual assault, sexual abuse, and sexual molestation." *Id.* ¶ 25.

## II. Procedural History

As a result of the above-described conduct, Plaintiff brings six counts in the Complaint: (1) Strict Liability against Carnival [Count I]; (2) Strict Liability against Dufry [Count II]; (3) Negligent Training and Monitoring Crew against Carnival [Count III]; (4) Negligent Training and Monitoring Crew against Dufry [Count IV]; (5) Negligent Provision of Security for Passengers against Carnival [Count V]; and (6) Negligent Failure to Warn or Inform Passengers against Carnival [Count VI]. *See generally* Compl. Plaintiff prays for punitive damages on all the negligence counts "to the extent" that the defendants were "more than simply negligent." *Id.* ¶¶ 19, 60, 73, 87, 101.

On May 19, 2020, Carnival filed the instant Motion, arguing that (1) Count III is an impermissible shotgun pleading that commingles legal theories and is unsupported by facts to render any theory plausible, and (2) the punitive damages claims should be stricken because punitive damages are unavailable as a matter of law in non-seaman personal injury maritime claims. D.E. 31.

The Motion is briefed and ripe for disposition.

## III. Legal Standard

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must state his claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 10(b). And "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count." *Id.*

While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

As to Carnival's request to strike the punitive damages request, Federal Rule of Civil Procedure 12(f) states: "the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'A motion to strike is a drastic remedy[,]' which is disfavored by the courts." *Thompson v. Kindred Nursing Ctrs. E.*, LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). A motion to strike is often denied "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Bank of Am., N.A. v. GREC Homes IX, LLC*, No. 13-21718, 2014 WL 351962, at *4 (S.D. Fla. Jan. 23, 2014) (internal quotations and citations omitted). However, "[a] request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful or outrageous conduct." *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23321-Civ-SCOLA, 2012 WL 4479084, at *2 (S.D. Fla. Sept. 28, 2012).

## IV. <u>Analysis</u>

### A. <u>Count III is Not a Shotgun Pleading</u>

Carnival argues that Count III is an impermissible shotgun pleading because it improperly commingles elements of one cause of action (negligent training) with another cause of action (negligent monitoring or supervision). *See* Mot. at 3–4; *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing as "shotgun pleadings" complaints that "commit[] the sin of not separating into a different count each cause of action or claim for relief").

Rule 10(b) sets forth "a flexible standard that turns on whether pleading multiple claims in one count advances or hinders the interests of clarity." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1139 (M.D. Fla. 2018) (citing Fed. R. Civ. P. 10(b)). "[N]otice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Id.* at 1138; *see also Weiland*, 792 F.3d at 1325 (complaint is not a shotgun pleading, even if it is "not a model of efficiency or specificity," so long as it "adequately put[s] [defendants] on notice of the specific claims against them and the factual allegations that support those claims"). The key inquiry is whether the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.

With respect to Count III, there is no increased burden. Carnival has demonstrated its understanding of the elements of those negligent training and negligent monitoring claims asserted against it. This is not, for example, a case where the plaintiff recites 41 alleged breaches under one claim of negligence. *Cf. Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338–39 (S.D. Fla. 2016). The Court declines to dismiss Count III on shotgun pleading grounds.

**B. Count III is Unsupported by Sufficient Facts to Render the Claim Plausible**

Though not a shotgun pleading, Count III lacks sufficient factual content to state a plausible claim for either negligent training or negligent monitoring.

As an initial matter, Plaintiff cannot state a claim for negligent training or monitoring based on boilerplate allegations that Carnival failed to, among other things, (1) supervise and monitor the activities and whereabouts of all its crew members; (2) control the activities and whereabouts of all its crew members; (3) enforce unspecified "rules, regulations, policies and procedures" for crew members who fraternize with passengers; (4) train all its crew members regarding non-fraternization and sexual assault prevention; and (5) otherwise "promulgate, monitor, and enforce

rules or policies regarding the prohibition against crew members having contact and interaction, including sexual relations, with passengers." D.E. 22 ¶ 55; *Iqbal*, 556 U.S. at 678 (plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully"); *Summers v. Carnival Corp.*, No. 13-23932-CV, 2015 WL 11983231, at *6 (S.D. Fla. Apr. 6, 2015) (granting motion to dismiss "because Plaintiff has failed to allege facts that are suggestive enough to render each element of his claim for negligent hiring, retention and training plausible"). Instead, Plaintiff must plausibly allege facts supporting each element of a claim for negligent training and negligent monitoring/supervision to state a claim under Rule 12(b)(6).

"Negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (internal quotations omitted); *accord Doe v. NCL (Bahamas) Ltd.*, No. 1:18-cv-20060-Civ-Scola, 2018 WL 3848421, at *3 (S.D. Fla. Aug. 13, 2018). Because Plaintiff fails to plead that Carnival negligently implemented and operated its training program vis-à-vis Ganesh Joshi and "Segain" and that such negligence caused Ganesh Joshi to sexually assault F.H. and/or caused "Segain" to watch and guard the door, Plaintiff fails to state a claim for negligent training. *Cf. Doe*, 2018 WL 3848421, at *3 (broad allegations of "fail[ing] to train…crewmembers [to] stay away from female and minor children passengers" which "allows and/or promotes improper conduct by its crewmembers including sexual assault, sexual battery, and sexual abuse" insufficient to state a claim).

Plaintiff also fails to state a claim for negligent monitoring or supervision. "Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the

employer fails to take further actions such as investigating, discharge, or reassignment.'" *Doe*, 2016 WL 6330587, at *4 (quoting *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). "Accordingly, Plaintiff 'must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment.'" *Id.* (quoting *Cruz*, 842 F. Supp. 2d at 1359).

Plaintiff fails to state a claim for negligent monitoring or supervision because she fails to allege that Carnival: (1) had actual or constructive notice of Ganesh Joshi's or "Segain's" unfitness; and (2) failed to take corrective action in light of its knowledge. *See id.* Plaintiff's generalized allegations about Carnival's knowledge that its foreign-born employees had a potential propensity to rape, *see* D.E. 22 ¶¶ 21–25, are insufficient to state a claim as to Ganesh Joshi and "Segain" in particular. *See Doe*, 2018 WL 3848421, at *3. Indeed, Plaintiff does not allege that either Ganesh Joshi or "Segain" is from any such impoverished country that leads to the alleged increased likelihood of child rape.

Plaintiff's pleading failings are especially evident because Plaintiff concedes that Ganesh Joshi and "Segain" are employees of Dufry, not Carnival; Plaintiff does not explain how Carnival, rather than Dufry, was supposed to train and monitor its non-employees. D.E. 22 ¶ 14; *cf. Kilbey v. Carnival Corp.*, No. 16-23186-Civ-Scola, 2017 U.S. Dist. LEXIS 32286, at *6–7 (S.D. Fla. Mar. 6, 2017) (no claim stated for negligent training or supervision against cruise line for injury caused by on-board masseur where plaintiff failed to explain the relationship between cruise line and spa concessionaire).

In sum, Count III lacks an adequate factual basis for either a claim of negligent training or negligent monitoring against Carnival. The count will be dismissed.[3]

[3] In her response to the Motion, Plaintiff did not seek leave to amend Count III in the event the Court ruled the claim was insufficiently pled. *See Wagner v. Daewoo Heavy Industs. Am. Corp.*, 314 F.3d 541, 542–44 (11th Cir. 2002)

**C. Punitive Damages Request**

Carnival relies on two recent opinions—the unpublished[4] case of *Eslinger v. Celebrity Cruises, Inc.*, 772 F. App'x 872 (11th Cir. 2019), and Judge Altonaga's interpretation thereof in *Doe v. NCL (Bahamas) Ltd.*, No. 19-cv-21486-CMA (*see* D.E. 31-1)—to conclude that punitive damages are unavailable as a matter of law in this case. In *Eslinger*, a passenger injured his ankle when jumping into the pool on the subject cruise ship; he contended the cruise line was medically negligent, and his wife sought loss of consortium damages. *See Eslinger v. Celebrity Cruises, Inc.*, No. 1:18-cv-23672-UU, D.E. 15 (Oct. 26, 2018). This Court ruled, and the Eleventh Circuit affirmed, that loss of consortium claims are not cognizable under federal maritime law. *See id.*; 772 F. App'x at 872–73. Plaintiff here does not seek loss of consortium damages. Thus, when read narrowly, *Eslinger* does not squarely control here. Judge Altonaga in *Doe*, however, struck the plaintiff's punitive damages claim in a case factually similar to the one at bar; in doing so, Judge Altonaga relied on the language in *Eslinger* stating that the Eleventh Circuit "has held that plaintiffs may not recover punitive damages, including loss of consortium damages, for personal injury claims under federal maritime law." *See* D.E. 31-1 at 35 (quoting *Eslinger*, 772 F. App'x at 872).

Plaintiff contends that, despite *Eslinger* and Judge Altonaga's *Doe* decision, punitive damages are still available in exceptional cases, and that this is such a case. *See* D.E. 37 at 13–16. This Court examined the viability of punitive damages under maritime law post-*Eslinger* in *Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1352–54 (S.D. Fla. 2019). The Court concluded that punitive damages may still be available, but only upon a showing of the

(district court not required to grant plaintiff leave to amend complaint *sua sponte* when counseled plaintiff never requests leave to amend).

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007); *see also* 11th Cir. R. 36-2.

defendant's intentional misconduct. *See id.* (citing *Altosino v. Warrior & Gulf Navigation Co. (In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala., on Sept. 22, 1993)* [hereinafter "*Amtrak*"], 121 F.3d 1421, 1429 (11th Cir. 1997) (concluding that "personal injury claimants have no claim for nonpecuniary damages such as … punitive damages, except in exceptional circumstances such as … those very rare situations of intentional wrongdoing"); *Doe v. Celebrity Cruises, Inc.*, 389 F. Supp. 3d 1109, 1113–15 (S.D. Fla. 2019) (holding that *Amtrak* still controls post-*Atlantic Sounding* such that a plaintiff may only seek punitive damages upon a showing of the defendant's intentional misconduct); *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260-CIV-LENARD/GOODMAN, 2018 WL 4047119, at *2–5 (S.D. Fla. May 8, 2018) (same); *see also Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 251–52 (11th Cir. 2018) (rejecting the contention that *Atlantic Sounding* abrogated *Amtrak* vis-à-vis loss of consortium claims, and affirming summary judgment in favor of defendant on plaintiff's loss of consortium claim where there were "no exceptional circumstances in this case and no allegations of intentional conduct")). Magistrate Judge Torres has similarly concluded that punitive damages may be available upon a showing of "gross recklessness tantamount to intentional misconduct." *See Noon v. Carnival Corp.*, No. 18-23181-Civ-WILLIAMS/TORRES, 2019 WL 3886517, at *11–14 (S.D. Fla. Aug. 12, 2019).

At this stage, viewing the allegations in the light most favorable to Plaintiff, Plaintiff has adequately alleged entitlement to punitive damages "to the extent" that Carnival was "more than simply negligent." *See* D.E. 22 ¶¶ 19, 60, 87, 101. For example, Plaintiff's allegations of Carnival's negligent failure to warn could plausibly rise to the level of "intentional misconduct" or "gross negligence" necessary for the Court to find that this is an "exceptional circumstance" in which punitive damages may be warranted. "To demonstrate 'intentional misconduct,' a plaintiff must

show that 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.'" *Doe*, 389 F. Supp. 3d at 1115 (quoting *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010)). Viewing the allegations in Plaintiff's favor, Plaintiff has alleged that Carnival's failure to warn of the risks of sexual assault on board (*see* D.E. 22 ¶ 96) resulted in a "high probability that injury or damage" to a vulnerable passenger such as the child F.H. could occur—particularly given the troubling statistics surrounding sexual assault on cruise ships. Of course, if discovery reveals that Carnival was not "more than simply negligent," Plaintiff will not be entitled to punitive damages. *Cf. Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924-CIV-MARTINEZ-GOODMAN, 2020 WL 2950684, at *6–7 (S.D. Fla. Jan. 18, 2020) (granting summary judgment on punitive damages claim where evidence demonstrated "mere recklessness").

**V. Conclusion**

Plaintiff simply has not stated a valid claim against Carnival for negligent training and/or monitoring crew. However, the Court declines to strike Plaintiff's punitive damages claim at this time. Accordingly, it is

ORDERED AND ADJUDGED that Carnival's Motion, D.E. 31, is GRANTED IN PART AND DENIED IN PART. Count III is DISMISSED from the Complaint, D.E. 22. In all other respects, the Motion is DENIED. It is further

ORDERED AND ADJUDGED that Carnival SHALL file its Answer to the Complaint **on or before July 7, 2020**.

DONE AND ORDERED in Chambers at Miami, Florida, this _26th_ day of June, 2020.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record